**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**APRIL SESSION, 1998**

FILED

December 15, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9706-CC-00248** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **BRADLEY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. R. STEVEN BEBB** |
| **STEVEN OVERSTREET,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal-D.U.I.)** |

FOR THE APPELLANT:

D. MITCHELL BRYANT
P. O. Box 161
Cleveland, TN  37364-0161

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

SANDY C. PATRICK
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

JERRY N. ESTES
District Attorney General

JOSEPH A. REHYANSKY
Assistant District Attorney
P. O. Box 1351
Cleveland, TN  37311

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On February 4, 1997, a Bradley County jury convicted Appellant Steven Overstreet of driving under the influence, second offense. After a sentencing hearing on February 6, 1997, Appellant was sentenced to eleven months and twenty-nine days in jail, with the sentence to be suspended and Appellant put on probation after 45 days in jail. Appellant challenges his conviction, raising the following issue: is there an inherent conflict between Tennessee Code Annotated sections 55-10-401 and 55-10-408.

After a review of the record, we affirm the judgment of the trial court.

## FACTS

On November 13, 1996, Appellant was indicted for driving under the influence, second offense.[1] Count One of the indictment charged Appellant with driving under the influence of an intoxicant or drug; or in the alternative, with driving with a blood-alcohol content of .10% or more. Appellant pleaded not guilty to this charge, and trial was held on February 7, 1997.

Officer Chris Bates of the Cleveland, Tennessee Police Department testified that around 6:30 a.m. on July 6, 1996, he and Officer Buddy Mitchell were at a Cleveland convenience store when he saw a white Ford Tempo speed into the parking lot and come to a sudden stop. Officer Bates testified that when

---

[1]Appellant was also indicted for driving on a revoked license. Appellant entered a guilty plea to that charge and he does not challenge his conviction or sentence for that offense.

Appellant got out of his car, he had to steady himself against the vehicle and he had a look of confusion about him. Officer Mitchell recognized Appellant and said that he knew that Appellant's drivers' license had been revoked. When the two officers approached Appellant, they smelled a strong odor of alcohol on his breath and person. When the officers asked Appellant whether he had been drinking, he said that he had four beers and a glass of champagne the night before. The officers then verified that Appellant's drivers' license had been revoked.

Officer Bates then administered three field sobriety tests to Appellant. After Appellant failed at least two of these tests,[2] Officer Bates asked Appellant to take a either a breath or blood test. Appellant agreed to take a blood test, and the officers transported him to an emergency room for testing. The blood test indicated that Appellant had a blood-alcohol content of .12%.

Officer Bates also testified that during a search of Appellant's car, he found two empty beer cans that felt cold and had dew on them.

Appellant testified that he had consumed the alcohol the night before he was arrested. Appellant claimed that he did not feel impaired when he drove his car on the morning of on July 6, 1996, and he stated that he felt he had passed the field sobriety tests. Appellant did not challenge the accuracy of the blood test results.

---

[2]Officer Bates did not testify about the results of the third test during either direct or cross-examination.

**ANALYSIS**

Appellant contends that his conviction for driving under the influence should be reversed because Tennessee Code Annotated sections 55-10-401 and 55-10-408 are impermissibly contradictory and therefore, cannot constitutionally coexist. Section 55-10-401 states, in relevant part,

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> > (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or
> > (2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

Tenn. Code Ann. § 55-10-401(a) (1998). Section 55-10-408 states, in relevant part,

> For the purpose of proving a violation of § 55-10-401(a)(1), evidence that there was, at the time alleged, ten-hundredths of one percent (.10%) or more by weight of alcohol in the defendant's blood shall create a presumption that the defendant's ability to drive was sufficiently impaired thereby to constitute a violation of § 55-10-401(a)(1).

Tenn. Code Ann. § 55-10-408(a) (1998). Essentially, Appellant claims that these two statutes give rise to different legal conclusions and, thus, the trial court should have charged the jury only on section 55-10-408, thereby giving him the opportunity to rebut the presumption of his intoxication.[3]

---

[3]The record indicates that the trial court instructed the jury that they could find Appellant guilty if they found beyond a reasonable doubt that 1) he had been driving with a blood-alcohol content of .10% or more, or 2) he had been driving under the influence of an intoxicant or drug. The court also instructed the jury that evidence of a blood-alcohol content of .10% or more created a presumption that Appellant was under the influence of an intoxicant or drug, but they were free to disregard that presumption.

-4-

An analysis of the recent history of these two statutes indicates that they are not contradictory. Prior to 1995, section 55-10-401(a) stated,

> It is unlawful for any person or persons to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state of Tennessee, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system.

Tenn. Code Ann. § 55-10-401(a) (1994). In addition, section 55-10-408(b) stated that

> Evidence that there was, at the time alleged, ten-hundredths of one percent (.10%) or more by weight of alcohol in the defendant's blood shall create a presumption that the defendant was under the influence of such intoxicant, and that the defendant's ability to drive was impaired thereby, sufficiently to constitute a violation of § 55-10-401. The provisions of this subsection shall only apply if the defendant has no prior convictions for violating the provisions of § 55-10-401.

Tenn. Code Ann. § 55-10-408(b) (1994). In 1995, the Tennessee General Assembly amended section 55-10-408(a) to provide that

> Evidence that there was, at the time alleged, ten-hundredths of one percent (.10%) or more by weight of alcohol in the defendant's blood shall be conclusive proof that the defendant was under the influence of such intoxicant, that the defendant's ability to drive was impaired thereby and shall constitute a violation of § 55-10-401.

Tenn. Code Ann. § 55-10-408(a) (1995). The Tennessee Attorney General subsequently issued an opinion which stated that this 1995 amendment was unconstitutional because it created a conclusive presumption of intoxication and impairment that relieved the State of its burden of proving an element of the offense. Tenn. Op. Att'y Gen. 95-117 (Nov. 28, 1995). The opinion suggested, however, that the legislature could achieve the same result by making it illegal to drive with a blood-alcohol content above a certain percentage. Id.

In response to the Attorney General's opinion, the legislature drafted a proposed amendment, which would have essentially given section 55-10-401 its current form and would have deleted section 55-10-408(a). The Attorney General subsequently issued an opinion which stated that the proposed section 55-10-401 would be constitutional in that it would make it illegal to either drive while under the influence of an intoxicant or with a blood-alcohol content of .10% or greater. Tenn. Op. Att'y Gen. 96-008 (Jan. 24, 1996). The opinion suggested, however, that it would be unwise to delete section 55-10-408(a) in its entirety. Id. The opinion suggested that it would be better to have a subsection creating a permissive presumption of intoxication when a driver had a blood-alcohol content of .10% or greater because such a presumption would aid in defining "under the influence" as set forth in section 55-10-401(a)(1). Id. The legislature subsequently amended sections 55-10-401 and 55-10-408 to their present forms.

This statutory history indicates that in enacting sections 55-10-401 and 55-10-408 in their current forms, the legislature did not create two contradictory statutes. Rather, the legislature merely created alternative ways to charge a defendant with impaired driving. A defendant could be charged under 55-10-401(a)(2), in which case a test indicating a blood-alcohol content of .10% or greater would be per se evidence of intoxication and impairment. If however, the charging instrument failed to specifically charge the elements of 55-10-401(a)(2), the permissive presumption of section 55-10-408(a) would come into play to assist in establishing intoxication and impairment. This conclusion is supported by the express language of 55-10-408(a), which indicates that it is admissible for "the purpose of proving a violation of § 55-10-401(a)(1)" and makes no mention of subsection (a)(2).

In short, we hold that sections 55-10-401 and 55-10-408 are not unconstitutionally contradictory.[4] Further, because Appellant was charged alternatively under both subsection 55-10-401(a)(1) and subsection 55-10-401(a)(2), the trial court was correct when it instructed the jury on both subsections. The State presented evidence that Appellant had been driving his vehicle with a blood-alcohol content of .12% and Appellant never challenged this evidence. Thus, the jury clearly had a basis for convicting Appellant under subsection 55-10-401(a)(2). Appellant's claim that he was not impaired is simply not relevant under this subsection. This issue is without merit.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
JAMES CURWOOD WITT, JR.

---

[4]Although Appellant does not directly challenge the constitutionality of section 55-10-401(a)(2) itself, we note that courts have consistently held that "per se blood-alcohol offense statutes" do not create unconstitutional presumptions about evidence, but instead specifically define prohibited conduct. See Lester v. State, 253 Ga 235, 320 S.E.2d 142 (1984); People v. Ziltz, 98 Ill. 2d 38, 455 N.E.2d 70 (1983); State v. Vogel, 467 N.W.2d 86 (N.D. 1991); State v. O'Connor, 220 N.J. Super. 104, 531 A.2d 741 (1984); Forte v. State, 707 S.W.2d 89 (Tex. Crim. App. 1986).